UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
YAN CHANG and
YONGZHENG WANG,

                    Plaintiffs,

              - against -

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES (USCIS), *et al.*,

                    Defendants.
------------------------------------------------------x

**MEMORANDUM & ORDER**
25-CV-1504 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Yan Chang ("Chang") brings the instant action against United States Citizenship and Immigration Services ("USCIS"), Attorney General of the United States Pamela Bondi, Director of USCIS Kika Scott, and former Secretary of Homeland Security Kristi Noem ("Defendants"), on behalf of herself and her minor son, Yongzheng Wang ("Wang"). (Compl., Dkt. 1.) Chang argues that Defendants have unreasonably delayed adjudication of her application for asylum in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b), 706(1), and seeks a writ of mandamus to compel Defendants to act on her application pursuant to the Mandamus Act, 28 U.S.C. § 1361. (*Id.* at 2.) Defendants move to dismiss the Complaint in its entirety pursuant Federal Rule of Civil Procedure ("Rule") 12(b). (Resp.[1], Dkt. 11, at 1.) For the reasons set forth herein, the Court dismisses Plaintiffs' Complaint without prejudice.

---

[1] On April 10, 2025, the Court issued an Order to Show Cause directing Defendants to "show cause why a writ of mandamus should not be issued." (Order to Show Cause, Dkt. 9.) Defendants responded on June 29, 2025, (*see* Resp., Dkt. 11), but Plaintiff failed to then reply, (*see* 8/1/2026 Dkt. Order). The Court thus treats Defendants' response as unopposed, (*see id.*), and construes it as a motion to dismiss. *See Wang v. United States Citizenship & Immigr. Servs.*, No. 22-CV-0149 (EK), 2022 WL 17851621, at *1 (E.D.N.Y. Aug. 3, 2022) (construing unopposed letter as motion to dismiss, and dismissing complaint against USCIS.)

**BACKGROUND**

Plaintiffs are natives of the People's Republic of China ("China") and are seeking asylum in, and withholding of removal from, the United States. (*Id.* ¶¶ 1–2, 10.) In August 2021, Plaintiffs entered the United States on a B2 visa. (*Id.* ¶ 9.) On February 24, 2022, Chang submitted an Application for Asylum and Withholding of Removal, known as a Form I-589 ("I-589"), with USCIS for herself and Wang, and received a notice of receipt. (*Id.* ¶¶ 10–11.) Chang sent an inquiry letter to USCIS, through her counsel, in May 2024, to which USCIS responded in June 2024, explaining that USCIS was experiencing a backlog issue. Chang submitted another inquiry letter, through her counsel, in January 2025, to which she did not receive a response.[2] (*Id.* ¶¶ 14–15.) As of the filing of this suit, Chang is still waiting for her in-person interview to be scheduled. (*See id.* ¶ 13.)

Chang filed suit in the Eastern District of New York on March 18, 2025, seeking to compel Defendants to adjudicate her asylum application. (*See id.*) Chang claims the three years she has been waiting constitute an unreasonable amount of time for her asylum case to be adjudicated under the APA. (*See id.* at 14.) Chang alternatively requests that the Court issue a writ of mandamus "compel[ling] Defendants to act on [her] I-589 [a]pplication," pursuant to the Mandamus Act, 28 U.S.C. § 1361. (*Id.*) On June 26, 2025, Defendants moved to dismiss pursuant to Rule 12(b). (Resp., Dkt. 11, at 1.)

---

[2] The Complaint does not describe the nature of the May 2024 and January 2025 inquiry letters that Chang sent to the New York Asylum Office through her counsel. (Compl., Dkt. 1, ¶¶ 14–15.) The Court presumes that the inquiries referred to the delay in scheduling her interview.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6)[3], "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face where it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In reviewing a complaint for failure to state a claim, the Court accepts as true all factual allegations and draws from them all reasonable inferences, while disregarding "conclusory allegations or legal conclusions couched as factual allegations." *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 91 (2d Cir. 2021) (quoting *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020)).

## DISCUSSION

### I.    Chang's Mandamus Claim

Chang's Mandamus Act claim must be dismissed. The Mandamus Act permits a district court to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus is an "extraordinary remedy," *Escaler v. U.S. Citizenship & Immigr. Servs.*, 582 F.3d 288, 292 (2d Cir. 2009), and is only available where plaintiffs establish that "(1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available," *Benzman v. Whitman*, 523 F.3d 119, 133 (2d Cir. 2008) (citation omitted).

---

[3] Although Defendants' motion does not set forth the subsection of Rule 12(b) pursuant to which they seek to dismiss the Complaint, (*see* Resp., Dkt. 11), it is apparent that their arguments seek dismissal for failure to state a claim pursuant to Rule 12(b)(6).

Because Chang can, and indeed does, bring an undue delay claim under the APA, "[t]he Court need not . . . consider whether [she] has satisfied the first two requirements" for mandamus relief. *Mu v. U.S. Citizenship & Immigr. Servs.*, No. 23-CV-2067 (HG), 2023 WL 4687077, at \*3 (E.D.N.Y. July 22, 2023). "The ability to bring a cause of action under the APA—even where, as here, Chang has failed to adequately plead that alternative remedy—means that Chang has an adequate alternative remedy, and therefore cannot state a mandamus claim." *Abasov v. United States Citizenship & Immigr. Servs.*, No. 25-CV-1793 (PKC), 2025 WL 3706663, at \*6 (E.D.N.Y. Dec. 22, 2025) (internal quotation marks and citation omitted); *Zhuo v. Mayorkas*, No. 23-CV-5416 (DLI), 2024 WL 4309232, at \*3 (E.D.N.Y. Sep. 26, 2024); *Luo v. U.S. Citizenship & Immigr. Servs.*, No. 23-CV-1104 (HG), 2023 WL 5672041, at \*3 (E.D.N.Y. Sep. 1, 2023).

## II.    Chang's APA Claim

The APA provides that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). Courts may, however, "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1). To determine whether agency action has been unreasonably delayed, courts look to the "source of delay—e.g., the complexity of the investigation as well as the extent to which the defendant participated in delaying the proceeding." *Reddy v. Commodity Futures Trading Comm'n*, 191 F.3d 109, 120 (2d Cir. 1999) (citing *Pub. Citizen Health Rsch. Grp. v. Comm'r*, 740 F.2d 21, 35 (D.C. Cir. 1984)). "Where, as here, a plaintiff seeks to compel action by immigration authorities, courts utilize the six-factor test articulated in *Telecomms. Rsch. & Action v. F.C.C.*, 750 F.2d 70, 79 (D.C. Cir. 1984) ('*TRAC*') to determine whether relief under the APA is warranted." *Abasov*, 2025 WL 3706663, at \*2 (internal quotation marks and citation omitted); *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*,

4

710 F.3d 71, 84 (2d Cir. 2013), *as amended* (Mar. 21, 2013) (adopting *TRAC* factors as the "test for determining if agency action is unreasonably delayed").[4]  These so-called "*TRAC*" factors are:

> (1) [T]he time agencies take to make decisions must be governed by a rule of reason;

> (2) [W]here Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply context for this rule of reason;

> (3) [D]elays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

> (4) [T]he court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

> (5) [T]he court should also take into account the nature and extent of the interests prejudiced by delay; and

> (6) [T]he court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.3d at 80 (citations and internal quotation marks omitted).  "A plaintiff need not 'demonstrat[e] that all of these factors weigh in that party's favor' to prevail on an unreasonable delay claim." *Abasov*, 2025 WL 3706663, at *3 (quoting *Mu*, 2023 WL 4687077, at *4).  "At the same time, a court may 'refuse[] to grant relief, even though all the other factors considered in *TRAC* favor[ ] it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain.'" *Id.* (quoting *L.M. v. Johnson*, 150 F. Supp. 3d 202, 213 (E.D.N.Y. 2015) (itself quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003))).

---

[4] As *Abasov* recognizes, "[s]ome out-of-circuit district courts have declined to analyze the *TRAC* factors on a motion to dismiss due to their fact-intensive nature." *Abasov*, 2025 WL 3706663, at *3 n.4.  "But courts within this Circuit have regularly held that unreasonable delay claims may be decided at the motion-to-dismiss stage." *Id.* (collecting cases).

For the following reasons, the Court holds that the balance of the *TRAC* factors weigh against finding Defendants' three-year delay unreasonable under the APA.[5]

### A.    First *TRAC* Factor: Rule of Reason

The first, "most important" *TRAC* factor—whether a rule of reason governs the time it takes the agency to make the decision at issue—weighs in favor of Defendants.  *See In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008); *Abasov*, 2025 WL 3706663, at *3.  USCIS's "last-in-first-out," or "LIFO," approach to processing I-589 applications prioritizes review of the newest applications to "discourage individuals from potentially filing meritless asylum applications to take advantage of the backlog to obtain employment authorization" while their case is pending.  U.S. Citizenship and Immigr. Servs., *Backlog Reduction of Pending Affirmative Asylum Cases: Fiscal Year 2021 Report to Congress* 2 (2021); *see* U.S. Citizenship and Immigr. Servs., *Asylum Application Processing: Fiscal Year 2022 Report to Congress* 4 (2022) (providing a similar explanation).[6]  The parties dispute whether LIFO is a rule of reason.  (*Compare* Resp., Dkt. 11, at 4 ("Numerous courts have found the LIFO-based scheduling system to be 'a rule of reason.'") *with* Compl., Dkt. 1, ¶ 29 ("While it has been previously held that [LIFO] is a 'rule of reason', it is not.").)  The Court finds the LIFO approach to be a rule of reason.

*First*, the fact that LIFO has a backlog does not undermine its validity as a rule of reason. "[R]ules of reason are not judged on whether they provide the best solution to a problem, but

---

[5] The Court will address the *TRAC* factors from most to least relevant.

[6] "In deciding a Rule 12(b)(6) motion, a court may take 'judicial notice of documents in the [public] record, including of the records and reports of administrative bodies.'" *Yueliang Zhang*, 2020 WL 5878255, at *1 n.2 (quoting *Volpe v. Nassau Cty.*, 915 F. Supp. 2d 284, 291 (E.D.N.Y. 2013)); *see Mu*, 2023 WL 4687077, at *2 (taking judicial notice of the fact that USCIS adjudicates asylum applications "on a LIFO basis").  A court may also take judicial notice of documents retrieved from official government websites.  *See Singh v. U.S. Citizenship & Immigr. Servs.*, No. 24-CV-3003 (LDH), 2025 WL 964145, at *1 n.3 (E.D.N.Y. Mar. 31, 2025) (citing *Rynasko v. New York Univ.*, 63 F.4th 186, 191 n.4 (2d Cir. 2023)).

whether they constitute a reasoned attempt to address mounting issues within a system." *Jan v. Mayorkas*, No. 24-CV-1686 (LDH), 2025 WL 964092, at *4 (E.D.N.Y. Mar. 31, 2025) (quoting *He v. Garland*, No. 23-CV-5386 (EK), 2024 WL 3708146, at *3 (E.D.N.Y. Aug. 7, 2024)). "LIFO, which presents an agency's 'establishment of a logical system to prioritize and process applications,' is one such attempt." *Abasov*, 2025 WL 3706663, at *4 (quoting *Lin v. Mayorkas*, No. 24-CV-1403 (RER), 2025 WL 1884304, at *4 (E.D.N.Y. July 7, 2025)). Courts accordingly recognize that although LIFO "forces asylum applicants who filed earlier to bear the brunt of those delays," it does so as part of an "attempt to address mounting issues with the asylum application process." *See, e.g.*, *Fangfang Xu v. Cissna*, 434 F. Supp. 3d 43, 53 (S.D.N.Y. 2020); *He*, 2024 WL 3708146 at *3 (making the same observation and concluding that the "LIFO model, despite any shortcomings, meets [the rule of reason] standard"). "[T]he fact that the system includes various forms of prioritization and delay . . . does [not] entitle Plaintiffs to relief under the APA." *L.M.*, 150 F. Supp. 3d at 214 n.4. And Chang does not allege that the delay in adjudicating her application is attributable to a lack of diligence by Defendants or anything other than the effects of LIFO. *See Ying Yu Liu v. Wolf*, No. 19-CV-0410 (PGG), 2020 WL 2836426, at *8 (S.D.N.Y. May 30, 2020) (concluding that "the delay was the result of the LIFO rule, which was itself a reasoned response to a systemic crisis" (quoting *Fangfang Xu*, 434 F. Supp. 3d at 53)).

*Second*, even assuming, for the sake of argument, that LIFO's backlog undermines its validity as a "rule of reason," (*see* Compl*.*, Dkt. 1, ¶ 28), USCIS has recently implemented reforms to address that concern. In 2024, USCIS introduced "a second track, which prioritizes cases in chronological order of receipt." (Resp., Dkt. 11, at 4); *see also Affirmative Asylum Interview Scheduling*, U.S. Citizenship and Immigr. Servs., https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/affirmative-asylum-interview-scheduling (last updated Mar. 29, 2024)

(explaining that the second track "permits some of the oldest pending applications to be completed in chronological order").  "This second track bolsters the conclusion that LIFO provides a rule of reason."  *Abasov*, 2025 WL 3706663; *see Chang v. Jaddou*, 2025 WL 2015143, at \*6 (concluding the "two-track system" constitutes a rule of reason); *Cheng v. Garland*, No. 24-CV-3465 (JLR), 2024 WL 5009146, at \*3 (S.D.N.Y. Dec. 6, 2024) (observing that "USCIS also recently adjusted its system for scheduling affirmative asylum interviews 'to adjudicate backlogged applications in chronological order'" and concluding that LIFO is a rule of reason).

The Court thus echoes the courts in this Circuit that have concluded that LIFO provides a rule of reason.  *See Yueliang Zhang v. Wolf*, No. 19-CV-5370 (DLI), 2020 WL 5878255, at \*4 (E.D.N.Y. Sep. 30, 2020) ("Numerous courts have found that the USCIS's use of LIFO in the asylum context is a rule of reason."); *Wara*, 2025 WL 2208255, at \*5 (joining "other courts in this Circuit by holding that Defendants' adjudication of asylum applications on a LIFO scheduling system is . . . an appropriate rule of reason"); *Konde v. Raufer*, No. 23-CV-4265, 2024 WL 2221227, at \*2 (S.D.N.Y. May 16, 2024) (joining the "chorus of judges in this Circuit finding that the time USCIS takes to adjudicate asylum applications through its LIFO policy is governed by a rule of reason").

## B.    Fourth *TRAC* Factor: Effect of Expediting Delayed Action

The fourth *TRAC* factor—the effect of expediting the delayed action—which is also one of the "most relevant" considerations, weighs strongly in favor of Defendants.  *N-N v. Mayorkas*, 540 F. Supp. 3d 240, 262 (E.D.N.Y. 2021) (citation omitted).  An agency "is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way."  *Kaur*, 2023 WL 4899083, at \*11 (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991)).  For the Court "to demand an accelerated protocol, [it] would have to intrude into a quintessentially administrative function, and in the process

8

reconfigure the agency's priorities" by ordering it to expedite an application merely because a suit has been filed. *See N-N*, 540 F. Supp. 3d at 261; *see also Xiaobin Xu v. Nielsen*, No. 18-CV-2048 (BMC), 2018 WL 2451202, at *2 (E.D.N.Y. May 31, 2018) (dismissing an unreasonable delay claim in part because "[t]here are many other applicants who have waited even longer than plaintiff; to grant him priority is to push them further back in line when the only difference between them is that plaintiff has brought a federal lawsuit"); *Gong v. Duke*, 282 F. Supp. 3d 566, 569 (E.D.N.Y. 2017) (same).

Defendants contend that "ordering immediate adjudication here would unjustifiably favor Plaintiffs over others for no reason other than the fact that they filed suit." (Resp., Dkt. 11, at 4.) Chang only takes issue with what she charges is USCIS's unreasonable delay in scheduling her interview. (Compl., Dkt. 1, at 14.) But "[a]s frustrating as the USCIS backlog may be, it is not apparent that allowing line jumping" would encourage the agency "to change its ways." *See Abasov*, 2025 WL 3706663, at *5 (quoting *Poz v. Mayorkas*, No. 23-CV-7902 (DLI), 2024 WL 4309234, at *5 (E.D.N.Y. Sep. 26, 2024)); *Qi v. U.S. Citizenship & Immigr. Servs.*, No. 23-CV-8843 (JLR), 2024 WL 2262661, at *6 (S.D.N.Y. May 17, 2024) ("[L]eapfrogging Plaintiff's application to the front of the line would do nothing to cure the deficiencies of the asylum application process . . . ." (quoting *Baisheng Chen v. Wolf*, No. 19-CV-9951 (AJN), 2020 WL 6825681, at*6 (S.D.N.Y. Nov. 20, 2020))). Rather, moving Chang's application to the front of the line would "simply move all other[] [applicants] back one space." *See FangFang Xu*, 434 F. Supp. 3d at 54 (quoting *L.M.*, 150 F. Supp. 3d at 213); *see also Sunny v. Biden*, No. 21-CV-4662 (BMC), 2023 WL 5613433, at *3 (E.D.N.Y. Aug. 30, 2023) (same); *Konde*, 2024 WL 2221227, at *4 (same). Thus, the Court concludes that expediting Chang's application would disrupt "agency activities of a higher or competing priority." *See TRAC*, 750 F.3d at 80.

9

### C.  Second *TRAC* Factor: Statutory Scheme

The second *TRAC* factor—whether "Congress has provided a timetable" for the agency to act—similarly does not support finding USCIS's delay unreasonable. *Id.*  Congress has directed USCIS to adjudicate an asylum application "within 180 days after the date an application is filed." *See* 8 U.S.C. § 1158(d)(5)(A)(iii).  However, Congress also divests applicants of "any substantive or procedural right or benefit that is legally enforceable" against the "United States or its agencies or officers or any other person." *Id.* § 1158(d)(7).  Because applicants may not enforce the 180-day adjudication timeline, the Court does not accord significant weight to this timeline. *See Ujka v. Mayorkas*, No. 24-CV-4801 (KPF), 2025 WL 2419545, at *7 (S.D.N.Y. Aug. 21, 2025) (compiling cases giving the second *TRAC* factor little weight in light of 8 U.S.C. § 1158(d)(7)); *Ying Yu Liu*, 2020 WL 2836426, at *9 ("Given Congress's decision that the schedule it set forth [in § 1158(d)] would not be binding, this Court cannot give that schedule binding effect here." (citation omitted)); *Fangfang Xu*, 434 F. Supp. 3d at 53 (reaching similar conclusion).

### D.  Third and Fifth *TRAC* Factors: Prejudice to Health and Welfare

The third and fifth *TRAC* factors concern the nature and extent to which Defendants' delay prejudices Plaintiffs' human health and welfare. *See TRAC*, 750 F.3d at 80.  Chang's primary contention is that the three years she has waited for an asylum interview increase the risk of possible degradation of her memory and its potential impact on her application.  (Compl., Dkt. 1, ¶ 32.)  While the Court is sympathetic to the delay that Chang has experienced and is continuing to experience, such hardships are "inherent in the process of seeking asylum," and thus insufficient to establish a "particularly prejudiced interest." *See Jan*, 2025 WL 964092, at *4; *S.L. v. United States Citizenship & Immigr. Servs.*, No. 24-CV-2776 (OEM), 2025 WL 2959313, at *7 (E.D.N.Y. Oct. 17, 2025) (finding plaintiff's allegations that, *inter alia*, "the passage of time will lead to evidentiary decay and thereby prejudice his ability to obtain asylum" did not warrant expediting

his application); *see also Sheiner v. Mayorkas*, No. 21-CV-5272 (ER), 2023 WL 2691580, *9 (S.D.N.Y. Mar. 29, 2023) ("[A]llegations of uncertainty and delay do not amount to the showing other courts have held meets the standard of human health and welfare being at stake."). In this regard, Chang has thus not demonstrated why her application should be placed in front of "longer-pending applications that present comparable interests." *Singh*, 2025 WL 1489804, at *3; *Plesha v. Garland*, No. 24-CV-7234 (BMC), 2024 WL 5221202, at *6 (E.D.N.Y. Dec. 26, 2024) (declining to grant relief because doing so would push the plaintiff "ahead of other applicants waiting for the adjudication" who may be facing "the same or worse harms and threats to their welfare").[7]

### E.       Sixth *TRAC* Factor: Agency Impropriety

Chang does not allege any agency "impropriety" contributing to the delay at issue. *TRAC*, 750 F.3d at 80.  Thus, this factor is neutral. *Kaur*, 2023 WL 4899083, at *12; *Waris v. Bitter*, No. 23-CV-9487 (JGLC), 2024 WL 3237914, at *8 (S.D.N.Y. June 28, 2024).

*       *       *

In sum, none of the *TRAC* factors favor Chang's APA claim for expedited consideration of her asylum petition, leading the Court to find that Defendants' delay is not unreasonable.  The Court does not wish to minimize the harm that Chang is experiencing due to the uncertainty inherent to the asylum process.  But in light of our overtaxed immigration system, many courts have found delays longer than Chang's not unreasonable under the APA. *See Abasov*, 2025 WL 3706663 (concluding a four-year delay for asylum adjudication not unreasonable); *Abdiev v. Garland*, No. 23-CV-8091 (DEH), 2024 WL 3742545, at *5 (S.D.N.Y. Aug. 9, 2024)

---

[7] The Court also notes that Plaintiff can take measures to record and document the salient facts relating to her background and history while her memory is still intact. *See* 8 C.F.R. § 208.9 (allowing applicant to bring, *inter alia*, "affidavits . . .  and other evidence" to an interview).

11

(concluding a delay of more than four years for asylum adjudication not unreasonable); *Ahmed v. Bitter*, No. 23-CV-0189 (NGG) (RJL), 2024 WL 22763, at *7 (E.D.N.Y. Jan. 2, 2024) ("[D]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." (citation omitted)). Chang's APA claim is therefore dismissed.

## CONCLUSION

For the reasons stated above, the Court grants Defendants' request to dismiss Plaintiffs' Complaint pursuant to Rule 12(b), which the Court has construed as a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). (*See* Resp., Dkt. 11.) "At some point, however, Defendants' continued failure to act on Plaintiff[s'] asylum application, if it continues, may be so severe as to give rise to an APA violation." *Abasov*, 2025 WL 3706663, at *7 (quoting *Abdiev*, 2024 WL 3742545, at *5). The Court therefore dismisses Chang's Complaint without prejudice, so Chang may refile "should [her] application for asylum remain pending without decision to an unreasonable degree." *Konde*, 2024 WL 2221227, at *5.

SO ORDERED.

/s/ Pamela K. Chen
_____
Pamela K. Chen
United States District Judge

Dated: March 9, 2026
        Brooklyn, New York

12